**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JOY G. WOOD, KAITLIN M. WOOD, and KRISTYNE N. WOOD | * * * | |
| Plaintiffs, | * * | |
| v. | * * | CIVIL ACTION FILE |
| CONNECTICUT GENERAL LIFE INS. CO., LIFE INSURANCE COMPANY OF NORTH AMERICA, and FLOOR AND DÉCOR OUTLETS OF AMERICA, INC. | * * * * * | |
| Defendants. | * | |

## <u>COMPLAINT</u>

COME NOW, JOY G. WOOD, KAITLYN M. WOOD, and KRISTYNE N. WOOD (hereinafter "Plaintiffs" or "Beneficiaries") and complains against CONNECTICUT GENERAL LIFE INS. CO. (hereinafter "CIGNA"), LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter "LINA", together with CIGNA, the "Insurance Defendants"), and FLOOR AND DÉCOR OUTLETS OF AMERICA, INC. (hereinafter, "Floor and Décor") for the denial of life insurance benefits, showing the Court the following:

**<u>Parties, Jurisdiction, and Venue</u>**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 1132.

2. This Court has venue for all causes of action stated herein pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events alleged herein took place within this Court's jurisdictional boundaries.  Further, pursuant to 29 U.S.C. §1132, venue is appropriate in this Court as the Plan at issue in this suit was administered in this District in Smyrna, Georgia.

3. Venue is appropriate in this Division as a substantial part of the events alleged as a basis for the federal claims took place within this Division's jurisdictional boundaries. Additionally, at least one Plaintiff resides in this Division.

4. The Defendant CIGNA is a foreign corporation organized under the laws of the State of Connecticut, and is qualified and authorized to do business in the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant CIGNA can be personally served with summons and complaint through its registered agent, DALE MORRIS, c/o CT CORPORATION, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361.

5. The Defendant LINA is a foreign corporation organized under the laws of the State of Pennsylvania, and is qualified and authorized to do business in the State

of Georgia and is subject to the jurisdiction and venue of this Court.  Defendant LINA can be personally served with summons and complaint through its registered agent, CT CORPORATION, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia  30046.

6. Defendant Floor and Décor is a corporation organized under the laws of the State of Delaware, with its principal place of business in Smyrna, Georgia.  It is qualified and authorized to do business in the State of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Floor and Décor can be personally served with summons and complaint through its registered agent, CT CORPORATION, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046.

7. Plaintiff Joy Wood is a resident of Marietta, Cobb, County, Georgia, and is the surviving spouse of Bradley Byron Wood ("Bradley").  Plaintiffs Kaitlin M. Wood and Kristyne N. Wood are Bradley's adult daughters. Bradley's life was insured by a voluntary group term life insurance issued, with a policy number of FLX-966802 (the "Policy"). The designated beneficiaries of that policy were Joy (50%), Kaitlin (25%), and Kristyne (25%). This policy was in force and effect from no later than August 1, 2015 through at least the date of Bradley's death, April 11, 2017.  *See* Exhibit 1.

# FACTS

## The Policy and Plan Documents

8. Bradley was hired on or about June 24, 2011 by Floor and Décor.

9. Defendant Floor and Décor sponsored the Floor and Décor Outlets of America, Inc.'s Insurance Plan (the "Plan") for the benefit of its employees. The Plan allowed employees to obtain voluntary group life insurance pursuant to the Policy.

10. The Policy of insurance was issued and underwritten by Defendant LINA, a subsidiary of Defendant CIGNA.

11. LINA and/or CIGNA charged, and Bradley paid, a monthly premium through payroll deductions taken by his employer, Floor and Décor.

12. Before filing this lawsuit, Floor and Décor provided the Plaintiffs with the Group Insurance Certificate for the Policy in effect at the time of Bradley's death ("hereinafter, the "Certificate"). Attached to the Certificate is a document entitled "Supplemental Information for Floor and Décor Outlets of America, Inc. Welfare Benefits Plan" (hereinafter, "Supplemental Information").  *See* Exhibit 2.

13. The Supplemental Information states that:

> You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of

benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

14. Collectively, the Supplemental Information and the Certificate are at least 28 pages in length (excluding, among other things, the Foreword and Table of Contents). By comparison, the Policy is 33 pages in length (excluding, among other things, the Table of Contents). *See* generally Exhibits 1 and 2.

15. The Supplemental Information comprises four of the 28 pages referenced in the preceding paragraph.

16. The Supplemental Information identifies Floor and Décor as the Plan Administrator, and states, among other things, that "[t]he Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, FLX-966802, issued by [LINA]."  The Supplemental Information further states that "[t]he Plan Administrator has authority to control and manage the operation and administration of the Plan" and that "[t]he Plan Sponsor may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy."

17. The Supplemental Information states that "[t]he Plan Administrator [Floor and Décor] has appointed the Insurance Company [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims." An Amendatory Rider to the Policy contains an analogous provision.

18. The Policy had a provision stating that:

> Agency
>
> The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy.  The Insurance Company [LINA] is not liable for any of their acts or omissions.

19. However, the Policy authorized LINA and/or CIGNA to request from Floor and Décor any information required to determine who is insured, the amount of insurance in force, and any other information needed to administer the Plan.

20. Similarly, the Policy stated that "[t]he Employer is required to cooperate with the Insurance Company [LINA] in the review of claims and applications for coverage."

21. Further, the Policy stated that "[a]ll records maintained by the Insurance Company [LINA] are, and shall remain, the property of the Insurance Company [LINA]."

22. At all times material hereto, Bradley was a named insured under the above-referenced insurance policy that provided death benefits to his beneficiaries.

<u>Bradley's Election of Benefits and Payment of Premiums</u>

23. From approximately June 1, 2013 through July 31, 2015, Bradley elected coverage under a prior plan (issued by a different insurance company) for voluntary employment life insurance in the amount of $110,000.

24. The Policy issued by LINA went into effect for the Plan in August 1, 2015. The Policy provided for a guaranteed issue amount payable upon the death of Bradley of the greater of $100,000 or the amount equal to the life insurance benefit in effect on the termination date of the prior plan. For Bradley, the guaranteed issue amount was $110,000.

25. The Policy also provided a maximum benefit of up to $500,000.

26. Effective on or about August 1, 2015, Bradley elected to be covered by the maximum benefit available under the policy, in the amount of $500,000.00. Floor and Décor's records show that from August 1, 2015 until the time of his death, Bradley had elected and was approved for and had actual coverage of $500,000.00.

27. Nearly a year after his election, on July 29, 2016, and continuing to April 21, 2017 (10 days following his death), Bradley's monthly premium quintupled, from $36.46 to $182.31, apparently reflecting his election for higher coverage.

28. After July 29, 2016, Defendants accepted and retained Bradley's increased premium payments.  At no time while Bradley was making the payments did Defendants seek to return any portion of the premium payments.

<u>The Insurability Requirement</u>

29. The Policy contained the following provision:

> During an Annual Enrollment Period, an Employee currently insured under the Voluntary Life Insurance portion of this Policy may increase his or her Voluntary Life Insurance Benefit, and an Employee who is eligible for the Voluntary Life Insurance portion of this Policy but who has not previously enrolled may become insured under the Policy, as long as the total Benefit does not exceed the Maximum Benefit, by satisfying the Insurability Requirement. Insurance will be effective on the later of the first of the month following the Annual Enrollment Period or the date the Insurance Company agrees in writing to insure the Employee.

30. The Policy defined the "Insurability Requirement" as:

> An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

31. The terms "insurability," "agrees in writing," "good health," and "evidence of good health" are not defined in the Policy.

32. The Policy is silent as to how and when the Insurance Company would agree in writing or otherwise require evidence of good health.

33. Similarly, the Certificate contained the following provision:

> During an Annual Enrollment Period, if you are currently insured under the Voluntary Life Insurance portion of this Policy, you may increase your Voluntary Life Insurance Benefit, or if you are eligible for the Voluntary Life Insurance portion of this Policy but have not previously enrolled, you may become insured under the Policy, as long as the total Benefit does not exceed the Maximum Benefit by satisfying the Insurability Requirement. Insurance will be effective on the later of the first of the month following the Annual Enrollment Period or the date the Insurance Company agrees in writing to insure you.

34. The Certificate defined the "Insurability Requirement" as:

> An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

35. The terms "insurability," "agrees in writing," "good health," and "evidence of good health" are not defined in the Certificate.

36. The Certificate is silent as to how and when the Insurance Company would agree in writing or otherwise require evidence of good health.

37. The Supplemental Information, which purports to be part of the Summary Plan Description, does not contain any reference to any "insurability requirement."

38. Defendant CIGNA purportedly mailed Bradley a letter enclosing an "Evidence of Insurability" Form on September 6, 2016. *See* Exhibit 3.

39. The Evidence of Insurability Form purportedly mailed to Bradley identified LINA as a "Cigna Company."

40. "Evidence of insurability" is not defined in the Policy, Certificate, or Supplemental Information.

41. The letter purportedly mailed to Bradley was addressed to his former address, and Bradley never received it.

42. Thereafter, although Bradley continued to pay increased premiums, neither LINA, CIGNA, nor Floor and Décor ever directed any other correspondence to Bradley related to evidence of insurability.

<u>Bradley's Death and Defendants' Denial of Claims</u>

43. On April 11, 2017, Bradley died in Chicago, Illinois while traveling on business.

44. The beneficiaries timely made a claim for the death benefits payable on Bradley's death under the said policy.

45. After notification of the claim for the policy proceeds upon Bradley's death, Defendant CIGNA wrote a letter dated July 5, 2017 to Joy Wood, stating that they would only pay $110,000.00 of the supplemental benefit the amount due under the policy, refusing to pay policy benefits in the amount of $390,000.00.

46. In its denial, Defendant CIGNA stated, among other things, that:

> Policy FLX 966802 became effective with Life Insurance Company of North America on August 1, 2015. The census shows Mr. Wood had $110,000 Voluntary coverage in effect prior to our policy. During Floor and Decor's 2015 initial open enrollment he elected to increase his Voluntary coverage to $500,000.

> According to the policy provision quoted above, if an Employee wishes to elect coverage which exceeds the Guaranteed Issue Amount, this insurance will be effective on the date the Insurance Company agrees in writing to insure that eligible person.

> On September 6, 2016, a letter was sent to Mr. Wood informing him that the benefit amount he elected required him to submit an Evidence of Insurability application to determine if he met the eligibility requirements to be approved for the Voluntary coverage.

> I have researched our systems and have determined that Mr. Wood did not provide an Evidence of Insurability application and was not approved for insurance above the $110,000 he had in effect under the prior plan.
> …

> In order to be eligible for the additional $390,000, he would be required to submit an Evidence of Insurability application and be approved in writing for this coverage.

> Since an application for Evidence of Insurability was never submitted for Bradley B. Wood we must regretfully inform you that the additional Voluntary life benefit of $390,000 is not payable under Policy FLX 966802.

Since the $390,000 was never approved we must decline liability for your portion of $195,000.

*See* Exhibit 4.

47. All the beneficiaries appealed Defendants' denial seeking a reconsideration of the denial of the claim.

48. Among other things, Joy Wood (through counsel) stated in a letter dated September 1, 2017 that:

The letter of denial recites that a letter dated September 6, 2016, was sent to Mr. Wood, requesting submission of evidence of insurability, via a form enclosed with the letter. The letter of September 6, 2016, was sent to "…STILLHOUSE CREEK, (sic) DRIVE …."

Mr. Wood moved from the Stillhouse Creek Drive address, a little over six (6) months prior to September 6, 2016, and his forwarding order with the Postal Service had expired. Mr. Wood's current address was well-known to his employer on September 6, 2016, inasmuch as Mr. Wood was an officer of his corporate employer. Mr. Wood never received the letter of September 6, 2016, and there was no other attempt by Cigna to contact Mr. Wood concerning the submission of the Evidence of Insurability Form.

The records of Mr. Wood's employer show that the Supplemental Life benefit of $500,000.00 total, was in effect on the date of his death. See printout from the employer's records enclosed herewith, marked Exhibit A. The employer's records further show that commencing July 29, 2016, and continuing to April 21, [2017] (10 days following the death of Mr. Wood), Cigna accepted a premium payment of $182.31 every bi-weekly pay period, deducted from Mr. Wood's paycheck. See printout of insurance premium payment records enclosed as Exhibit B.

By failing to take any action to forward the Evidence of Insurability Form to Mr. Wood's correct address, and by accepting a premium payment which

included payment for the Supplemental Life Insurance benefit, Cigna waived the submission of the Evidence of Insurability Form and is estopped to deny coverage. Further, the actions of Mr. Wood's employer, as agent for Cigna, in representing to Mr. Wood that he had the Supplemental Life benefit (Exhibit A), and in deducting the premium payments from Mr. Wood's earnings (Exhibit B), are attributable to Cigna, and likewise work an estoppel. <u>See United Ins. Co. Of America v. Hodges</u>, 161 Ga. App. 146 (1982); <u>Home Materials. Inc. V. Auto Owners Ins. Co</u>., 250 Ga. 599 (1983).

*See* Exhibit 5.

49. Additionally, in a letter dated August 15, 2017, Kristyne and Kaitlin appealed the denial of the insurance proceeds in the amount of $390,000.00. Among other things, the letter stated that:

**Reasons we disagree**

I have included the document (Document A) that shows where at the beginning of July 2016 he was paying only $36.46. Starting July 29, 2016 the payment for voluntary life insurance increased by 5 times the amount. One would then only assume that Cigna approved the contract considering he is shown as being approved in the following documents (Document B) for five times the original contract. Secondly, there are no documents showing that he was ever told about the cancellation of the increase in policy. Only after we told you of his passing did you decide to not approve the amount even though he had been paying for the increased amount since July. For Cigna to accept the increased premiums over a long duration of time and then for Cigna to deny those benefits once being notified about the passing is "Bad Faith". He showed good faith in believing that you agreed to the policy he requested when taking the increased premium amount of $145. Lastly, there is no proof that Mr. Wood ever received the letter that you sent us in the packet asking for the proof of medical evidence of insurability because you did not send it certified mail.

*See* Exhibit 6.

50. In letters dated October 19, 2017 to Joy's attorney and to Kaitlin Wood, Defendant CIGNA affirmed its initial decision to deny the full death benefits owing to the beneficiaries, claiming that the lack of a completed Evidence of Insurability Form prevented the increased benefits from becoming effective.

51. Additionally, the letters stated:

> Regarding collection of premiums, LINA does not maintain any individual employee records or amounts of insurance. This information, along with collection of premium, would be maintained by the Employer or an agent of their choosing. Therefore, LINA would be unable to determine eligibility for individual employees until an application is received or a claim is filed. Policy FLX 966802 specifically states that the Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company, and LINA is not liable for any acts or omission by the Policyholder, Employer and Plan Administrator. Payment of premiums is not a guarantee of coverage.

> While Mr. Wood's Employer may have collected premiums in regards to this policy, it does not constitute a guarantee of insurance. It is an Employee's responsibility to be aware of policy requirements. An insurance certificate is provided to the policyholder, and is made available to those insured by the policy upon request. For benefits to be payable an Employee must meet all policy guidelines.

*See* Exhibits 7 and 8.

52. CIGNA's letter to Joy dated October 19, 2017 also claimed that "[t]he address provided for the 09/06/2016 [letter to Bradley Wood] was information

provided by Mr. Wood's Employer.  LINA would have no ability to know that

Mr. Wood had moved."  *See* Exhibit 7.

53. In another letter dated January 23, 2018, Kristyne and Kaitlin stated, among

other things, that:

> Number two: If Cigna still holds these funds, then we would like to
> understand why no action was taken by Cigna or LINA to notify my father
> or Floor & Decor to stop the payment of the premiums due to the policy
> cancellation. This did not happen and premiums continued to be collected
> for over 9 months. You have yet to provide us with anything from either
> agency that where my father was formally denied coverage. Additionally,
> you did not notify his employer so that they could adjust the payroll
> deductions that were paying for this policy. If you have any documentation
> of notification to Floor and Decor that we can confirm with them, we would
> like to see them. Floor and Decor maintains they were never notified to
> discontinue the collection of premiums. Cigna and/or LINA had a
> responsibility to notify both my father and his employer that the premiums
> were no longer due because the policy had been cancelled. I am certain it is
> not legal for a corporation to continue to receive premium payments for an
> insurance policy that they apparently had no intention of honoring. We also
> find it odd that it took 19 months for LINA to come forward and say that the
> policy was denied only after my father had passed away. …Were both
> companies willing to continue to collect the premiums regardless of the
> status of the policy?
>
> Number three: you stated that a letter was sent to my father's address on
> September 9, 2016. If my father requested to change the policy in August of
> 2015, why did it take over 13 months to send the Evidence of Insurability
> Form? On top of that, the premiums were increased in July of 2016. So prior
> to supposedly receiving the evidence of insurability form, his payments were
> increased. In the image I sent from our first appeal, it clearly shows that he
> had been approved and had a guaranteed amount of 500,000 for his policy
> (reference image #4). Also, my father's widow is emphatic that no letter was
> received at their home. My father … certainly would never had continued to

make payments on an expensive policy if he knew the coverage was no longer valid.

*See* Exhibit 9.

## COUNT I
## Against LINA and CIGNA
## Recovery of Benefits under 29 U.S.C. § 1132(a)(1)

54. Plaintiffs reincorporate and re-allege the preceding paragraphs as if set forth fully herein.

55. 29 U.S.C. §1132(a)(1) provides that beneficiaries may bring an action for the recovery of benefits due under the terms of a plan.

56. By accepting Bradley's payment of premiums for the benefit amount of $500,000, but by paying only $110,000 of the Policy's benefit amounts, the Insurance Defendants have breached the insurance contract and failed to provide benefits due under the Plan.

57. Further, the Insurance Defendants waived any reliance upon any evidence of insurability requirement.  The Insurance Defendants accepted and retained Bradley's payment of increased premiums for approximately nine months without providing Bradley any notice to Bradley that they had not approved the increased coverage. The Insurance Defendants accepted and retained Bradley's payment of increased premiums even after it received no response to the letter

CIGNA purportedly sent to Bradley on September 6, 2016. These actions are so inconsistent with an intent to enforce such a requirement so as to induce a reasonable belief that such right has been relinquished.

58. Plaintiffs are entitled to recover interest on the total amount of Defendants' liability from July 10, 2017 to the date of judgment.

**COUNT II**
**Against LINA and CIGNA**
**Equitable Estoppel**

59. Plaintiffs reincorporate and re-allege paragraphs 7-53 as if set forth fully herein.

60. 29 U.S.C. §1132(a)(3) provides that beneficiaries may bring an action to obtain equitable relief for fiduciaries' violations of ERISA. Plaintiffs bring this equitable claim in the alternative to Count I.

61. LINA and CIGNA should be equitably estopped from any right to rely upon the submission of an Evidence of Insurability Form.

62. LINA and CIGNA, as plan fiduciaries, have duties to exercise care, skill, prudence, and diligence in their actions towards the Plan and its participants.

63. Additionally, the Policy authorized LINA and/or CIGNA to request from Floor and Décor any information required to determine who is insured, the amount of insurance in force, and any other information needed to administer

the Plan. Similarly, the Policy stated that "[t]he Employer is required to cooperate with the Insurance Company [LINA] in the review of claims and applications for coverage." Further, the Policy stated that "[a]ll records maintained by the Insurance Company [LINA] are, and shall remain, the property of the Insurance Company [LINA]."

64. Thus, LINA and CIGNA had the obligation and the opportunity to ensure that the premiums it received from Plan participants correctly matched the coverage provided to Plan participants.

65.  By remaining silent that it did not consider Bradley's election for increased coverage to be effective, but instead accepting and retaining Bradley's payment of increased premiums from July 2016 through April 2017 due to his election of supplemental life insurance, LINA and/or CIGNA gave Bradley (and the Plaintiffs) the impression that he was insured for the maximum benefit amount of $500,000.00.

66. LINA and CIGNA were aware (or, in accordance with their fiduciary duties and contractual authority, should have been aware) that LINA and/or CIGNA was receiving Bradley's increased payment of premiums for approximately nine months even though they never received a completed evidence of insurability form from Bradley.

67. LINA and CIGNA took no actions to notify Bradley that they did not consider the increased coverage to be effective because they had not received a completed evidence of insurability form from Bradley. Rather, LINA and/or CIGNA continued to accept Bradley's increased premium payments such that Bradley (and the Plaintiffs) had a right to believe that LINA and CIGNA had agreed to provide coverage in the increased amount.

68. Given the collection and retention of the increased premium payments, and the increased benefit of $500,000.00 as reflected on Floor and Décor's online benefits enrollment page, Bradley (and the Plaintiffs) were unaware that LINA and CIGNA did not believe the increased coverage to be effective because LINA and CIGNA had not received a completed evidence of insurability form from Bradley.  Rather, Bradley (and the Plaintiffs) reasonably believed that he was covered by the supplemental life insurance policy.

69. Bradley's reliance (and the Plaintiffs' reliance) upon the Defendants' actions was also reasonable given that the Policy and Plan Documents do not define terms such as "insurability," "agrees in writing," "good health," "evidence of good health," and "evidence of insurability."

70. Further, Bradley's reliance (and the Plaintiffs' reliance) upon the Defendants' actions was reasonable as the Policy and Plan Documents are silent

as to how and when the Insurance Company would agree in writing or otherwise require evidence of good health.

71. Given these ambiguities in the language of the Policy, and given that Bradley's payroll deductions increased approximately a year after he elected the increased premium, Bradley could have reasonably assumed that the LINA and CIGNA's retention of such payments constituted approval of the increased coverage.

72. The reliance described above was to Bradley and the Plaintiffs' detriment.

73. Among other things, Bradley (and Joy) relied upon LINA and/or CIGNA's acceptance of the increased premiums by foregoing the purchase of other life insurance on Bradley's life.

74. Additionally, Bradley (and the Plaintiffs) relied upon LINA and/or CIGNA's acceptance of the increased premiums by not otherwise taking further action to ensure that Bradley had satisfied the insurability requirement to CIGNA and LINA's satisfaction.

75. Accordingly, the Plaintiffs are entitled to the additional Voluntary life benefit in the amount of $390,000, as they should be placed in the position they would have been had LINA's representations been true.

## COUNT III
## Against LINA and CIGNA
## Reformation (from the Insurance Defendants' Waiver)

76. Plaintiffs reincorporate and re-allege paragraphs 7-53 and 62-74 as if set forth fully herein.

77. 29 U.S.C. §1132(a)(3) provides that beneficiaries may bring an action to obtain equitable relief for fiduciaries' violations of ERISA. Plaintiffs bring this equitable claim in the alternative to Count I.

78. LINA and CIGNA waived the Insurability Requirement by accepting Bradley's increased premium payments for a period of approximately nine months, and by continuing to accept Bradley's increased premium payments after CIGNA and LINA did not receive a response to the Evidence of Insurability Form CIGNA purportedly sent Bradley on September 6, 2016.

79. Where an insurer has waived an evidence-of-insurability requirement, as here, the Court has the equitable power to reform a policy.

80. This Court should reform the Policy as it failed to express the agreement of Bradley and LINA, owing either to mutual mistake, or to LINA's fraudulent (or similarly inequitable) conduct and Bradley's mistake.

81. Specifically, it was fraudulent (or similarly inequitable) for LINA and/or CIGNA to collect increased premiums from Bradley for approximately nine months while never approving the increased coverage.

82. As a result of LINA and/or CIGNA's fraudulent or similarly inequitable conduct, Bradley was mistaken as to the amount of his insurance coverage. Due to this mistaken understanding, Bradley and Joy did not purchase other life insurance on Bradley's life and they did not otherwise take further action to ensure that Bradley had satisfied the insurability requirement to CIGNA and LINA's satisfaction.

83. Accordingly, the Plaintiffs are entitled to the additional Voluntary life benefit in the amount of $390,000 for which Bradley paid, under the equitable remedy of surcharge.

## COUNT IV
## Against LINA and CIGNA
## Breach of Fiduciary Duty

84. Plaintiffs reincorporate and re-allege paragraphs 7-53 as if set forth fully herein.

85. 29 U.S.C. §1132(a)(3) provides that beneficiaries may bring an action to obtain equitable relief for fiduciaries' violations of ERISA. Plaintiffs bring this equitable claim in the alternative to Count I.

86. Pursuant to ERISA, LINA has fiduciary duties to participants of the Plan such as Bradley.  These duties include the exercise of care, skill, prudence, and diligence in their actions towards the Plan and its participants

87. An Amendatory Rider to the Policy and the Certificate's Supplemental Information expressly conveyed fiduciary responsibilities to LINA regarding claims adjudication. *See* Exhibits 1 and 2.

88. CIGNA performed claims adjudication on LINA's behalf, and, in so doing, assumed fiduciary duties to participants of the Plan such as Bradley.

89. The Policy had other provisions that granted LINA broader authority over various aspects of Plan administration and record-keeping, including, but not limited to:  the right to request from Floor and Décor any information required to determine who is insured, the amount of insurance in force, and any other information needed to administer the Plan; requiring the Employer to cooperate in the review of claims and applications for coverage; and by specifying that all records maintained by LINA are the property of LINA.

90. Thus, LINA had fiduciary duties - and exercised them - over not only the determination of claims for benefits, but also over plan administration more generally.

91. By way of example, LINA caused CIGNA to purportedly mail the evidence of insurability form to Bradley.  *See* Exhibit 3.

92. As CIGNA purportedly mailed the evidence of insurability form to Bradley, it assumed fiduciary duties over plan administration as well.

93. LINA and CIGNA breached their duties to Bradley in various ways.  For example, despite not receiving a response to the evidence of insurability form it purportedly mailed, LINA and/or CIGNA continued to collect increased premium payments from him until his death.  Relatedly, LINA and/or CIGNA failed to audit its records and accounts (maintained for the benefit of Plan participants such as Bradley) such that it collected increased premiums for approximately nine months for a level of coverage which LINA and/or CIGNA purportedly never approved.  This failure to audit its records and accounts led to another breach –the failure to communicate material matters related to the Plan to participants such as Bradley.

94. Defendants' breaches of fiduciary duties harmed Bradley and the Plaintiffs by, among other things, causing Bradley and Joy to forego the purchase of other life insurance on Bradley's life. Additionally, Bradley and the Plaintiffs relied upon LINA and/or CIGNA's acceptance of the increased premiums by not

otherwise taking further action to ensure that Bradley had satisfied the insurability requirement to CIGNA and LINA's satisfaction.

95. Due to LINA and CIGNA's breach of fiduciary duties, the Plaintiffs are entitled to the additional Voluntary life benefit in the amount of $390,000 under the equitable remedy of surcharge.

## COUNT V
## Against Floor and Décor
## Breach of Fiduciary Duty

96. Plaintiffs reincorporate and re-allege paragraphs 7-53 as if set forth fully herein.

97. 29 U.S.C. §1132(a)(3) provides that beneficiaries may bring an action to obtain equitable relief for fiduciaries' violations of ERISA.

98. Pursuant to ERISA, Plan Administrators such as Floor and Décor have fiduciary duties to Plan participants such as Bradley.

99. One of the fiduciary duties Floor and Décor owes to Plan participants under ERISA is to furnish a condensed and understandable explanation of the Plan in the form of the summary plan description. The summary plan description is required to advise participants, in plain language, how to obtain coverage, and in what circumstances participants may lose or fail to qualify for coverage.

100. Floor and Décor purportedly provided its employees with the Supplemental Information, which claimed that "[t]he Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA."

101. Collectively, the Supplemental Information and the Certificate are at least 28 pages in length (excluding, among other things, the Foreword and Table of Contents). By comparison, the Policy is 33 pages in length (excluding, among other things, the Table of Contents). Additionally, many of the provisions of the Certificate are analogous to the terms of the Policy.  Due to its length and complexity, the Certificate cannot serve as a proper summary plan description.

102. Alternatively, to the extent that the Supplemental Information is claimed to independently serve as the summary plan description, it omitted any reference to the Insurability Requirement.

103. Therefore, Floor and Décor did not properly furnish a summary plan description to Bradley.  Even assuming it provided a copy of the Certificate and Supplemental Information to Bradley (which Plaintiffs do not concede), such Certificate and Supplemental Information did not properly inform participants such as Bradley information of essential terms like the insurability requirement.

104. Floor and Décor breached its fiduciary duty to Bradley by failing to properly inform Bradley of the insurability requirement in a summary plan description.

105. Had Floor and Décor properly informed Bradley of the insurability requirement in a summary plan description, Bradley would have taken actions to satisfy any such requirements.

106. Floor and Décor owes other fiduciary duties to its Plan participants such as Bradley. The Supplemental Information identifies Floor and Décor as the Plan Administrator, with the authority to control and manage the operation and administration of the Plan.  The Supplemental Information also states that Floor and Décor, as the Plan Sponsor, may terminate, suspend, withdraw, or amend the Plan, at any time.

107. Floor and Décor had a duty to communicate with LINA and/or CIGNA to manage the administration of the Plan by, among other things, ensuring that Plan participants such as Bradley had obtained coverage for the insurance premiums that Floor and Décor collected and remitted to LINA and/or CIGNA.

108. Floor and Décor failed to ensure that LINA and/or CIGNA had actually agreed to provide coverage to Bradley, notwithstanding his payment of increased premiums for approximately nine months and notwithstanding that

Floor and Décor's benefits records reflected that Bradley had elected, approved, and had actual coverage in the amount of $500,000.00 under the Voluntary life plan, effective August 1, 2015.

109. Further, Floor and Décor had a duty to ensure that it maintained and provided up-to-date Plan participants' personnel records to LINA and/or CIGNA.

110. Floor and Décor failed to maintain correct contact information for Bradley (an officer of the company), which caused LINA and/or CIGNA to purportedly mail the evidence of insurability form to an obsolete address.

111. Floor and Décor's breaches of fiduciary duties in administering the Plan harmed Bradley and the Plaintiffs by, among other things, causing Bradley and Joy to forego the purchase of other life insurance on Bradley's life. Additionally, Bradley and the Plaintiffs relied upon LINA and/or CIGNA's acceptance of the increased premiums by not otherwise taking further action to ensure that Bradley had satisfied the insurability requirement to CIGNA and LINA's satisfaction.

112. Due to Floor and Décor's breaches of fiduciary duties, the Plaintiffs are entitled to the additional Voluntary life benefit in the amount of $390,000 under the equitable remedy of surcharge.

## COUNT VI
## Against All Defendants
## Attorneys' Fees

113. Plaintiffs reincorporate and re-allege the preceding paragraphs as if set forth fully herein.

114. Under 29 U.S.C. § 1132(g)(1), the court is authorized to award reasonable attorney's fees and costs of the action.

115. As Plaintiffs were made to expend substantial time, effort, and expense to file this action in order to recover the funds they were owed, the Plaintiffs request that the Court award them their attorney's fees and costs.

THEREFORE, Plaintiffs pray that:

(a)     process issue and the Defendants be served as provided by law;

(b)     the Plaintiffs recover of the Defendants the sum of all proceeds payable under the policy, plus interest from July 10, 2017 at the maximum legal rate permitted by law;

(d)     the Plaintiffs recover attorney's fees and costs; and

(e)     the Plaintiffs have a trial by a jury of twelve on the issues raised in the Plaintiffs' Complaint.

(f)     the Plaintiffs have such other and further relief as this Court deems necessary and appropriate.

Respectfully submitted this 28th day of June, 2019.

THE BARNES LAW GROUP, LLC


/s/ Roy E. Barnes_____
ROY E. BARNES
Ga. Bar No:  039000
J. CAMERON TRIBBLE
Ga. Bar No:  754759

*Attorneys for Plaintiffs*

31 Atlanta Street
Marietta, GA 30061
(770) 227-6375
(770) 227-6373 (fax)
ctribble@barneslawgroup.com